UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-61147-BLOOM/Valle

REAGAN WIRELESS CORPORATION,

    Plaintiff,

v.

APTO SOLUTIONS, INC. and
TOM WILLIG,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Motion to Dismiss with Prejudice the Fraud Claim in Plaintiff's Amended Complaint, filed by Defendants, Apto Solutions, Inc. ("Apto") and Tom Willig ("Willig") (together, "Defendants"). ECF No. [28] (the "Motion"). Plaintiff Reagan Wireless Corporation ("Reagan" or "Plaintiff") filed a response, ECF No. [29], and Defendants filed a reply, ECF No. [30]. The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court grants the Motion.

    I.    **BACKGROUND**

Reagan is a wholesale distributor of cell phones and related accessories. Am. Compl., ECF No. [26] ¶ 7. Apto is in the business of managing and disposing of used information technology equipment, including cell phones. *Id.* ¶ 6. At the end of 2017, Reagan and Apto through their representatives began discussions of entering a business relationship, since Apto could procure large quantities of used cell phones, and Reagan possessed the wholesale marketing channels to resell such phones. *Id.* ¶ 10. According to the Amended Complaint,

Reagan's management had concerns about the potential of Apto flooding the market with used cell phones and the quality of product—specifically, that used Google phones are known to have burnt-pixels, known as burn-in. *Id*. ¶¶ 12, 14. To address Reagan's concerns, Apto agreed to sell the Google phones exclusively to Reagan, and offered Reagan an unconditional right to return, within 45 days of receipt by Reagan, any product to Apto for a full refund, which agreements were memorialized in writing. *Id.* ¶ 13; *see also* ECF No. [26-1] at 5 (the "Purchase Agreement").

Reagan alleges that on December 29, 2017, Mark Laffler, on behalf of Reagan, and Willig, on behalf of Apto, participated in a telephone call to negotiate the terms of the initial purchase, and during which Laffler asked Willig if any of the phones had burn-in—to which Willig responded in the negative. *Id.* ¶ 15. Accordingly, Apto issued an invoice to Reagan comprising 14,077 Google-branded cell phones for a total of $2,402,584.82. *Id.* ¶¶ 16, 19; *see also* ECF No. [26-1] at 1-3 (the "Invoice").

Once Reagan received the cell phones, its staff began testing and inspecting them, and determined that in fact more than half of the units had burn-in, and a significant number were in worse condition than the grade stated on the Invoice, affecting the price point. *Id*. ¶¶ 20-21, 23. After agreeing to several price reductions and return merchandise authorizations ("RMAs"), Apto has failed to refund the amount Reagan claims is due. *Id*. ¶¶ 26, 29, 31, 34, 44. According to Reagan, Apto's president indicated that Apto did not have sufficient money to send Reagan because Apto never contemplated a return of such a large percentage of the product. *Id*. ¶ 39.

As a result, Reagan commenced this action against Apto, asserting claims for breach of contract and fraud in the inducement, based upon Apto's representation that the phones did not have burn-in, when Reagan found more than half of them did, and that a cash refund would be

paid, when Apto did not have enough cash on hand to honor such a promise in the event that Reagan returned all or a substantial portion of the cell phones. Apto seeks dismissal of the fraud claim, arguing that it is barred by the independent tort doctrine, and that in any event, the fraud count fails to adequately allege a misrepresentation.

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349,

1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

Where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citation omitted). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc*., 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III. ANALYSIS

Defendants first argue that Reagan's fraud claim based upon representations of the quality of product and Apto's ability to quickly provide a refund is barred by the independent tort doctrine. In response, Reagan argues that the case law is clear that claims for fraudulent inducement can co-exist with a claim for breach of contract because the fraud occurs before the contract and is independent of the contract.

"Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996) (citation omitted).

> One who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. When this happens and the defrauding party also refuses to perform the contract as it stands, he commits a second wrong, and a separate and distinct cause of action arises for the breach of contract. The same basic transaction gives rise to distinct and independent causes of action which may be consecutively pursued to satisfaction.

*Id*. at 1239 (citation omitted). Nevertheless, "to set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort. *Kay v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014). Indeed, "[f]undamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Freeman v. Sharpe Res. Corp.*, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 407-09 (Fla. 2013)). Thus, "[i]n assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on

whether the alleged fraud is separate from the performance of the contract." *Kaye*, 2014 WL 2215770, at *5 (citation omitted).

Reagan is correct that claims for fraud in the inducement and breach of contract are not mutually exclusive. However, the fraud alleged in this case is not separate from the performance of the contract between Reagan and Apto. First, while the initial representation that the phones did not have burn-in may have been inaccurate, or perhaps even fraudulent, the parties specifically agreed in the Purchase Agreement that "Reagan shall have the unconditional right to return ***any*** product to Apto." ECF No. [26-1] at 5 (emphasis added). In effect, per the Purchase Agreement, Reagan had the right to return any units for any reason. Notably, Reagan does not allege that Apto refused to accept return of the defective units identified by Reagan.

Moreover, although Reagan alleges that it was induced to enter the agreement with Apto in part based on the representation that Apto would issue cash refunds for returned product—when in fact Apto did not have enough cash to potentially refund Reagan's entire purchase immediately—Reagan's true complaint appears to be with the speed of Apto's ability to provide refunds. However, such a claim does not give rise to a claim for an independent claim of fraud. *See Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 78 (Fla. 3d DCA 1997) (holding that plaintiffs' claim regarding speed of listing within system, quantity of reservations received, and lack of benefit from defendant's management experience, contrary to pre-contract representation was not type of fraud claim independent from contract).

Tellingly, in the breach of contract claim, Reagan acknowledges that the Purchase Agreement does not provide a timeframe for refund. *See* ECF No. [26] ¶ 51. And, once again, Reagan does not allege that Apto has refused to issue refunds, but affirmatively alleges that Apto has not issued the refund *yet*. Thus, even assuming that the statements made were fraudulent, the

Amended Complaint does not sufficiently demonstrate that the misrepresentations that form the basis of Reagan's fraud claim are independent from the misrepresentations that form the basis of Reagan's breach of contract claim.  Accordingly, Reagan cannot state a claim for fraud.

Because the Court has determined that the fraud claim is barred by the independent tort doctrine, the Court need not consider Apto's remaining argument regarding the sufficiency of the misrepresentation allegations.

## IV.     CONCLUSION

For the reasons set forth, Defendants' Motion, **ECF No. [28]**, is **GRANTED**, and the fraud claim is **DISMISSED WITH PREJUDICE**.  Therefore, the hearing set for Friday, October 12, 2018 at 1:30 p.m. is **CANCELED**.  Defendants shall file their answer **on or before October 16, 2018**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 5th day of October, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record