# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-cv-61147-BLOOM/Valle

REAGAN WIRELESS CORPORATION,

      Plaintiff,

v.

APTO SOLUTIONS, INC. and
TOM WILLIG,

      Defendants.

_____/

## ORDER ON MOTION TO DISMISS COUNTERCLAIMS

**THIS CAUSE** is before the Court upon Plaintiff Reagan Wireless Corporation's ("Plaintiff" or "Reagan") Motion and Supporting Memorandum for Dismissal of Counterclaims, or, Alternatively, for Striking of Request for Attorneys' Fees, ECF No. [34] ("Motion"), filed on November 6, 2018. Defendant Apto Solutions, Inc. ("Defendant" or "Apto") filed a Response, ECF No. [39]. Despite the Court's granting Plaintiff's request for additional time in which to file a reply, Plaintiff failed to timely do so. *See* ECF No. [44].[1] The Court has carefully reviewed the Motion and Response, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court denies the Motion.

## I.      BACKGROUND

As set forth in greater detail in the Court's previous order on Apto's motion to dismiss, ECF No. [32], this case arises as a result of a business relationship turned sour. Apto is the business of managing and disposing of used information technology equipment, including cell

---

[1] The Court also granted Plaintiff's counsel's request to withdraw, and required that Plaintiff retain counsel on or before January 2, 2019. *See id.* To date, no counsel has entered an appearance on behalf of Plaintiff.

phones. Reagan is a wholesale distributor of cell phones and related accessories. After some negotiations, the parties entered into an agreement whereby Apto would sell Google-branded phones exclusively to Reagan with an unconditional right to return within 45 days of receipt. *See* Am. Compl., ECF No. [26] ¶¶ 6-7, 12-14. The parties memorialized their agreement in writing. *See* ECF No. [26-1] at 5 (the "Purchase Agreement"). Thereafter, Reagan sent Apto 50% of the invoiced amount, *see* ECF No. [26-1] at 2-3 (the "Invoice"), or $1,201,292.41. ECF No. [26] ¶ 18. After receiving over fourteen thousand cell phones from Apto, Reagan rejected more than half of them due to screen burn-in. *Id*. ¶¶ 19, 22. Reagan did not make the remaining 50% payment on the Invoice, and requested a refund from Apto after returning the non-conforming cell phones. *Id*. ¶¶ 25-27. Apto was unable to provide a refund for the cell phones Reagan returned until it could attempt to sell the returned cell phones and other inventory product to generate cash flow. *Id*. ¶ 39. As a result, Reagan commenced this action asserting a claim for breach of contract against Apto.[2]

In its Answer, Apto asserts counterclaims against Reagan for breach of contract and breach of the covenant of good faith and fair dealing. *See* Answer, ECF No. [33]. In pertinent part, Apto alleges that at the beginning of the parties' relationship, Defendant Willig forwarded a document explaining the criteria describing the different grades assigned by Apto to its products. ECF No. [33] ¶ 11. At the end of 2017, the parties discussed a possible business relationship in which Apto would supply Reagan exclusively with its entire stock of Google-branded Pixel and Nexus phones, which included all grades. *Id*. ¶ 15. According to Apto, at no time were device screen conditions discussed, nor were there any representations made about the conditions of the phone screens other than as stated in the grading criteria. *Id*. ¶ 16. The negotiations

---

[2] Reagan also asserted a claim for fraud, which the Court previously dismissed. *See* ECF No. [32].

contemplated that Reagan would take all grades of Apto's stock. *Id.* ¶ 18. Based upon Reagan's representations of expertise and market power, Apto agreed to guarantee Reagan exclusive purchasing and resale rights to Apto's Google-branded phone for the duration of the parties' relationship, and the right to return any product for a full refund. *Id*. ¶¶ 21-22. The terms of the parties' agreement was memorialized in writing in the Purchasing Agreement. *Id*. ¶ 20. In exchange, Reagan wired Apto 50% of the invoiced amount, with the balance of the money due three weeks later. *Id*. ¶ 24.

According to Apto, the phones shipped were tested and conformed to its grading criteria. *Id*. ¶ 25. Nevertheless, after less than a week, Reagan began complaining about the quality of certain phones with screen issues and demanded that Apto ship spare parts for repairs, which Apto agreed to do. *Id*. ¶¶ 27-28. In subsequent communications, it became clear that Reagan never had any intention of selling all grades of phones. *Id*. ¶ 32. Reagan did not pay any of the remaining invoiced amounts. *Id*. ¶ 33. Moreover, Reagan returned a large number of lower graded phones and demanded that Apto reduce the agreed-upon prices. *Id*. ¶¶ 35-37. Apto agreed and extended the unconditional return window, during which time Reagan was able to dispose of all of the higher grade phones in its possession, but was not able to sell approximately 2,400 lower graded phones in the inventory. *Id*. ¶¶ 39-41. Ultimately, Apto accepted return of the remaining phones, which Reagan had had in its possession for over three months. *Id*. ¶¶ 44, 47. Apto was able to resell the returned phones; however, at a loss compared to the original contract price negotiated with Reagan. *Id*. ¶¶ 52-54.

Reagan seeks dismissal of Apto's counterclaims for failure to state a claim under Rule 12(b)(6), and in the alternative, to strike Apto's request for attorneys' fees under Rule 12(f).

## II.      LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Moreover, "courts may infer from the factual allegations in the

complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

Where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citation omitted). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### III.   ANALYSIS

Reagan first argues that Apto's counterclaims fail because Apto has no affirmative right of recovery, since Reagan's recovery rights arise from the same documents and transactions underlying Apto's counterclaims, and Reagan's claims exceed the amounts claimed by Apto. Thus, Reagan argues that it has a right of recoupment that defeats Apto's right to recovery. The Court disagrees. "Recoupment is a common law, equitable doctrine that permits a defendant to

assert a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff."
*United States v. Keystone Sanitation Co.*, 867 F. Supp. 275, 282 (M.D. Pa. 1994) (citing *Berger v. City of N. Miami*, 820 F. Supp. 989, 991 (E.D. Va. 1993)). "Typically, recoupment is invoked in situations involving 'a credit and debt arising out of a transaction for the same goods or services.'" *Richmond Manor Apts., Inc. v. Certain Underwriters at Lloyd's London*, Case No. 09-60796-CIV-ALTONAGA/Brown, 2011 WL 13175618, at *8 (S.D. Fla. Feb. 28, 2011) (quoting *In re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998)). However, Reagan also concedes that recoupment is an affirmative defense, but argues that if a claim is facially subject to an affirmative defense, the claim may be dismissed. Even so, indulging Reagan's argument for dismissal on this ground would require the Court to discount the factual allegations in Apto's counterclaims, which is not the standard applied upon a 12(b)(6) motion. Thus, the Court will not dismiss Apto's counterclaims upon this basis.

Reagan next argues that Apto fails to state a claim for breach of contract because Reagan did not owe Apto a duty to use its best efforts to sell the phones, where the Purchase Agreement granted Reagan an unconditional right to return the phones. Moreover, even if such a duty could be implied, Apto has not alleged actions or omissions constituting a breach of that duty or any damages sustained as a result of the breach. Upon review, Reagan's arguments are not well-taken.

First, the parties agree that as a transaction in goods, the relationship between them is governed by Florida's Uniform Commercial Code, Florida Statutes §§ 672.101 *et seq.* ("UCC"). Pursuant to the UCC, "[a] lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale." Fla.

Stat. § 672.306(2). Reagan contends that the Purchase Agreement, which granted Reagan an unconditional right of return, removed its duty as a buyer to use its best efforts to promote the sale of the cell phones. It argues that the unconditional right of return conflicts with such an implied duty. However, Reagan cites no authority to support its argument. "On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, No. 09-495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). "The movant must support its arguments for dismissal with citations to legal authority." *Id*. (citing S.D. Fla. L.R. 7.1(a)(1)). "Where a [counter-]defendant seeking dismissal . . . under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal." *Id*. (citing *Super. Energy Servs., LLC v. Boconco, Inc.*, No. 09-0321, 2010 WL 1267173, at *5-6 (S.D. Ala. Mar. 26, 2010) and *United States v. Vernon*, 108 F.R.D. 741, 742 (S.D. Fla. 1986)).

In addition, Apto has sufficiently pled facts demonstrating how Reagan allegedly breached its duty and the damages it has sustained as a result of that breach. In pertinent part, Apto alleges that within days of receiving the phones, Reagan confirmed its intention of only keeping products it considered to be "end user friendly or devices that fit" its markets, kept the highest graded phones, and returned the majority of the phones received from Apto claiming that it could not sell them, and which Apto was able to sell elsewhere at a loss. ECF No. [33] ¶¶ 32, 51-52, 63. Apto's damages arise from Reagan's refusal to pay the second half of the invoice amount, and the resulting sales (at a loss) of the units that Reagan ultimately returned. Given the sufficiency of the allegations, the Court will not dismiss Apto's counterclaim against Reagan for breach of contract.

Finally, Reagan argues that Apto fails to state a claim for breach of the covenant of good faith and fair dealing. It argues that such a claim is not an independent cause of action, Apto does not identify an express term of the Purchase Agreement that Reagan breached, and implying such a duty contravenes the unconditional right of return in the Purchase Agreement. Once again, Reagan's arguments for dismissal are without merit.

Under Florida law, every contract contains an implied covenant of good faith and fair dealing that protects "the reasonable expectations of the contracting parties in light of their express agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (quoting *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996)); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). The covenant is implied as a gap-filling default rule where the terms of the contract vest a party with substantial discretion, requiring that party to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the contract counterparty. *See Brown v. Capital One Bank (USA), N.A.*, Case No. 15-60590-CIV-BLOOM/Valle, 2015 WL 5584697, at *3-4 (Sept. 22, 2015) (citing *Karp v. Bank of Am., N.A.*, No. 8:12-cv-1700-T-17MAP, 2013 WL 1121256, at *3 (M.D. Fla. Mar. 18, 2013) and *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1225 (S.D. Fla. 2013)). Contracts governed by the UCC are subject to the same duty of good faith. *See* Fla. Stat. § 671.203 ("Every contract or duty within this code imposes an obligation of good faith in its performance and enforcement.").

"A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion*, 420 F.3d at 1151. The implied duty of good faith must therefore "relate to the performance of an

express term of the contract . . . [and] cannot be used to vary the terms of an express contract." *Burger King Corp. v. Weaver*, 169 F. 3d 1310, 1316 (11th Cir. 1999) (quoting *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998) and *City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. 4th DCA 1997)).  Further, the covenant cannot "add an obligation to the contract which was not negotiated by the parties and not in the contract." *Hosp. Corp. of Am.*, 710 So. 2d at 575.  As such, "there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement."  *QBE*, 94 So. 3d at 548 (citing *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001)).

In its counterclaims, Apto sufficiently alleges that Reagan breached the Purchase Agreement by failing to pay the second half of the invoice amount, and breached the implied duty under the UCC to use its best efforts to sell the phones Apto supplied exclusively to Reagan.  In addition, under the UCC, "[t]he obligations of good faith, diligence, reasonableness, and care prescribed by this code may not be disclaimed by agreement . . . ," and therefore, Reagan's unconditional right of return in the Purchase Agreement does not conflict with its alleged duty of good faith.  Fla. Stat. § 671.102(2)(b).  Thus, Reagan was required to exercise its unconditional return rights in good faith, which Apto sufficiently alleges Reagan did not. Therefore, the Court will not dismiss Apto's counterclaim based on Reagan's alleged breach of the duty of good faith and fair dealing.

Reagan also requests, in the alternative, that the Court strike Apto's request for attorneys' fees contained in its prayer for relief, arguing that there is no statutory or contractual basis for an award of prevailing party attorneys' fees in this matter.  In response, Apto points out that it seeks

only "appropriate" attorneys' fees, and that while there may be no entitlement to prevailing party attorneys' fees in the instant case, Apto may be entitled to fees for discovery violations or other bad-faith conduct in litigation. Thus, Apto contends that it would be premature to strike its request.

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," and grants a court broad discretion in making this determination. Fed. R. Civ. P. 12(f); *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005) (citing *Williams v. Eckerd Family Youth Alt.*, 908 F. Supp. 908, 910 (M.D. Fla. 1995)). Under Rule 12(f), "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *United States Commodity Futures Trading Comm'n v. Mintco, LLC*, No. 15-CV-61960, 2016 WL 3944101, at *2 (S.D. Fla. May 17, 2016). Thus, despite the Court's broad discretion, a motion to strike is considered a drastic remedy and is often disfavored. *Thompson v. Kindred Nursing Ctrs. E.*, *LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty.*, Fla., 306 F.2d 862, 868 (5th Cir. 1962)); *Fabing v. Lakeland Reg'l Med. Ctr., Inc.*, No. 8:12-CV-2624, 2013 WL 593842, at *2 (M.D. Fla. Feb. 15, 2013) (calling Rule 12(f) a "draconian sanction"). Upon review, the Court will not strike the request for appropriate attorneys' fees at this juncture.

## IV.    CONCLUSION

Accordingly, Reagan's Motion, **ECF No. [34]**, is **DENIED**. Reagan shall file its Answer to the counterclaims, ECF No. [33], **on or before January 28, 2019**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 16th day of January, 2019.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Reagan Wireless Corporation
720 S. Powerline Rd., Suite D
Deerfield Beach, FL 33442
Attention: Daniel Kaufman, Esq.